IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORNERSTONE DEVELOPERS,
LTD., *et al.*,                                    :

       Plaintiffs,

       v.                                    :    Case No. 3:15-cv-93

SUGARCREEK TOWNSHIP, *et*                          JUDGE WALTER H. RICE
*al.*,                                             :

       Defendants.

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS (DOC. #12) AND
GRANTING PLAINTIFFS LEAVE TO FILE AMENDED COMPLAINT
WITHIN 30 DAYS; CASE TO REMAIN PENDING ON COURT'S
DOCKET

---

Cornerstone Developers, Ltd. ("Cornerstone"), and Guarantors Oberer

Development Company, Oberer Construction, Ltd., and George R. Oberer, Jr.

(collectively "Plaintiffs"), filed suit against Sugarcreek Township, Sugarcreek

Township Trustees Scott W. Bryant, Nadine S. Daugherty and Michael E. Pittman,

and Sugarcreek Township Fiscal Officer Ted Hodson (collectively "Defendants").

Plaintiffs seek damages, as well as declaratory and injunctive relief, stemming from

Defendants' efforts to cease providing fire and emergency medical services to

Plaintiffs' commercial real estate development. This matter is currently before the

Court on Defendants' Motion for Partial Judgment on the Pleadings, Doc. #12.

## I.     Background and Procedural History

This case involves two parcels of land located in Sugarcreek Township, in Greene County, Ohio.  In 2006, at the request of the property owners, the City of Centerville annexed a large portion of this property through an expedited type-2 annexation process.  *See* Ohio Rev. Code § 709.023.  As is typical in a type-2 annexation, the property also remained part of Sugarcreek Township, and remained subject to the Township's property taxes, *see* Ohio Rev. Code § 709.023(H), including taxes levied for Fire and Emergency Medical Services ("EMS"), which continued to be provided by the Township.

In conjunction with the annexation, the City of Centerville agreed to implement a tax-increment financing ("TIF") plan, whereby improvements to the annexed property would be temporarily exempt from a portion of property taxes. In exchange, the property owners would make payments to finance infrastructure improvements related to economic development of the property.  *See* Ohio Rev. Code §§ 5709.40 and 5709.42.  The City of Centerville agreed to direct a portion of these funds to Township Fire and EMS services, to defer the cost of increased demand for such services in connection with the commercial development of the property.

The Township maintains that the funds provided by the City are insufficient to cover the increased cost.  In 2006, the Township filed suit in state court, challenging the City's authority to establish the TIF and divert property taxes. Ultimately, the Supreme Court of Ohio held that the City had acted within its

2

authority. The court noted that the Township was still able to collect taxes on 25% of the value of any improvements to the property, and that this revenue could be used to offset the financial burden of any increased demand for Fire and EMS services. *Sugarcreek Twp. v. City of Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261.

Thereafter, Cornerstone began to develop the two parcels of land at issue, making plans for the construction of shopping centers, restaurants, and specialty retail stores. In 2014, Costco Wholesale Corporation purchased some of the land and constructed a new store.

Ohio law provides that "[t]he board of township trustees of any township may, by resolution, whenever it is expedient and necessary to guard against the occurrence of fires or to protect the property and lives of the citizens against damages resulting from their occurrence, create a fire district of any portions of the township that it considers necessary." Ohio Rev. Code § 505.37(C). On November 17, 2014, just days before Costco opened its doors, Sugarcreek Township trustees passed Resolution No. 2014.11.17.08, which created a Fire District effective February 1, 2015. The new Fire District provided Fire and EMS services to all of Sugarcreek Township *except* the Cornerstone Development and portions of nearby public roads. Township Administrator Barry Tiffany explained to the Dayton Daily News that the Resolution was enacted because Centerville was not offering enough funds from its tax collection on the annexed Cornerstone property to cover the fire department's operating costs. Doc. #1-2, PageID#41.

3

Because the City of Centerville does not have its own fire department, it requested proposals from neighboring communities for the provision of Fire and EMS services to the Cornerstone Development, but no proposals were submitted. The absence of Fire and EMS services created an obvious threat to the public safety of employees, customers, and contractors at the Cornerstone Development. Accordingly, on December 9, 2014, Centerville's planning commission halted all further construction at the Development until this issue was resolved.

Understandably, this hampered Cornerstone's ability to develop the property, and inhibited negotiations with several prospective merchants. Milano's Atlantic City Subs, a restaurant chain, backed out of its purchase agreement with Cornerstone, citing public safety concerns. Cornerstone maintains that the moratorium on construction also made it difficult to make payments on its commercial loan, thereby subjecting the Guarantors to liability.

To protect their interests, Plaintiffs filed suit in the Greene County Court of Common Pleas, seeking legal and injunctive relief. *Cornerstone Devs., Ltd. v. Sugarcreek Twp.*, Case No. 2015-cv-0031. On January 20, 2015, the state court issued an agreed preliminary injunction prohibiting the Township from effectuating the Fire District pending final disposition of the matter. It set a trial date of March 5, 2015, on the claims for injunctive relief. Rather than go to trial, the Township Trustees rescinded the Resolution creating the Fire District.

Nevertheless, because the Township has expressed continued concern about the unfair financial burden, and has not promised to forego future attempts to

4

recreate the Fire District, Plaintiffs argue that a cloud continues to hang over the Development, scaring away potential purchasers. Accordingly, on March 10, 2015, Plaintiffs filed this lawsuit against Sugarcreek Township, and against its Trustees and its Fiscal Officer in their official capacities. The Complaint includes the following claims: (I) Monetary Damages Based on Taking/Temporary Taking; (II) Mandamus; (III) Equal Protection violation; (IV) 42 U.S.C. §§ 1983 and 1988; (V) Declaratory Judgment; (VI) Injunctive Relief; (VII) Unjust Enrichment; (VIII) Tortious Interference with Business Relationship; and (IX) Lost Profits and Damages. Doc. #1. Plaintiffs seek damages under 42 U.S.C. § 1983 and Ohio common law, as well as declaratory and injunctive relief, attorneys' fees and costs.

Three days after filing the Complaint, Plaintiffs filed a Motion to Certify Question of State Law to the Supreme Court of Ohio, Doc. #4, citing two novel issues of state law. They note that Ohio Revised Code § 505.37 provides various methods by which a township can *provide* Fire and EMS services to its residents. However, the statute is silent concerning the circumstances under which a township can *remove* such services. Plaintiffs therefore asked the Court to certify two questions to the Supreme Court of Ohio: (1) Is a township authorized to remove services to an incorporated portion of the township without the consent of the municipality?; and (2) Can a township remove fire and emergency medical services to an incorporated territory on the basis that the property is subject to one or more tax increment financing districts?

Defendants argued that Plaintiffs' motion was premature, because there were other potentially dispositive issues that should be resolved first. Defendants raised those issues in their Motion for Partial Judgment on the Pleadings, Doc. #12. The Court agreed that Defendants' motion should be resolved first. Oral argument was held on July 14, 2015.

On October 21, 2015, Plaintiffs filed a Notice of Additional Facts. Doc. #17. They note that, on October 19, 2015, Sugarcreek Township enacted three new Resolutions, creating a new Fire District which excludes numerous Township properties—including the Cornerstone Development—that lie both in the Township and the City of Centerville. Plaintiffs argue that these new Resolutions remove any doubt that there is a live, judiciable controversy, and make immediate certification of state law questions to the Ohio Supreme Court all the more urgent.

## II.     Defendants' Motion for Partial Judgment on the Pleadings (Doc. #12)

### A.     Fed. R. Civ. P. 12(c)

Defendants have moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Motions for judgment on the pleadings under Rule 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

6

granted only if the moving party is nevertheless clearly entitled to judgment."

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)

(internal citation and quotation marks omitted). However, the court need not

accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing

*Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a

complaint must contain direct or inferential allegations respecting all the material

elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois

Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the

complaint need to be sufficient to give notice to the defendant as to what claims

are alleged, and the plaintiff must plead 'sufficient factual matter' to render the

legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of

Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662 (2009)). A "legal conclusion couched as a factual allegation" need not be

accepted as true, nor are recitations of the elements of a cause of action

sufficient. *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a

Rule 12(c) motion, "matters of public record, orders, items appearing in the record

of the case, and exhibits attached to the complaint[ ] also may be taken into

account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting

*Amini v. Oberlin Coll*., 259 F.3d 493, 502 (6th Cir. 2001)).

7

### B.    Federal Claims

#### 1.    Takings Clause (Count I)

In Count I of the Complaint, Plaintiffs allege that Defendants' conduct "in passing the Resolution, and holding out the possibility of doing so again, threatens the commercial viability of the Development, along with the finances of the Guarantors."[1] Plaintiffs further allege that Defendants' conduct has "deprived Plaintiffs of the economically viable use of their properties," and "constitutes a permanent and/or temporary regulatory taking of the property for which Plaintiffs are entitled to just compensation" under the Fifth and Fourteenth Amendments to the United States Constitution.[2] They seek a "monetary award of just compensation" for the "uncompensated regulatory taking."  Doc. #1, PageID#17.

In their Motion for Partial Judgment on the Pleadings, Defendants argue that this Takings Clause claim is not ripe for judicial review, because Plaintiffs have not yet sought compensation for the alleged taking in state court.  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court held that a Takings Clause claim is not ripe until: (1) the plaintiff receives a final decision from the government; and (2) the plaintiff

---

[1]  As noted, *supra,* Plaintiffs maintain that this "possibility" has now become a reality, given the passage of the three recent Resolutions enacting a new Fire District.

[2]   The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that private property will not "be taken for public use, without just compensation."  U.S. Const. amend. 5.

8

has sought compensation through established state procedures. *Id.* at 186, 195. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied compensation." *Id.* at 195. *See also Wilkins v. Daniels*, 744 F.3d 409, 417 (6th Cir. 2014) (discussing two-part ripeness test).

In Ohio, a property owner alleging a physical or regulatory taking must file a mandamus action in state court to compel public authorities to institute appropriation proceedings. *See* Ohio Rev. Code §§ 163.01-163.62. This procedure has been deemed "reasonable, certain, and adequate" for seeking just compensation. *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). Until the state appropriation proceedings are complete and the property owner has been denied just compensation, there is no constitutional injury, and a Takings Clause claim is not ripe. *River City Capital, L.P. v. Board of County Comm'rs*, *Clermont Cnty.*, 491 F.3d 301, 306 (6th Cir. 2007).

Here, it is undisputed that Plaintiffs have not filed a mandamus action in state court and have not yet been denied just compensation. Plaintiffs argue, however, that this is not a fatal defect, because: (1) they have mounted a facial challenge to Defendants' conduct; and (2) ripeness is merely a prudential requirement.

Citing *Village of Maineville v. Hamilton Township Board of Trustees*, 726 F.3d 762, 765-66 (6th Cir. 2013), Plaintiffs first argue that, because they have

9

raised a *facial* challenge to Defendants' conduct, they were not required to request compensation through state procedures prior to asserting their Takings Clause claim in federal court. In a facial challenge, it is alleged that "the mere enactment of a statute constitutes a taking." In contrast, an as-applied challenge alleges that "the particular impact of government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987).

Defendants deny that Plaintiffs have mounted a facial challenge as opposed to an as-applied challenge. They note that the Resolution at issue was rescinded before it ever went into effect.[3] Moreover, Plaintiffs do not seek to invalidate Ohio Revised Code § 505.37 or argue that the Township had no right to create a Fire District that excluded a portion of the Township. Instead, Plaintiffs seek damages for action taken by the Township as it applies to their particular property.

The Court need not decide, at this juncture, whether Plaintiffs have mounted a facial challenge or an as-applied challenge. As explained in *Wilkins*, a plaintiff asserting a facial challenge may be excused from the "final decision" requirement of *Williamson County*. However, regardless of whether a plaintiff is asserting a facial challenge or an as-applied challenge, a plaintiff seeking "just compensation" under the Takings Clause is still required to satisfy the second requirement of *Williamson County*. In other words, the plaintiff "must seek just compensation

---

[3] As previously noted, Plaintiffs allege that Defendants have recently passed Resolutions creating another Fire District that excludes the Cornerstone Development from Fire and EMS Services.

through state procedures." *Wilkins*, 744 F.3d at 417. *See also Ventura Mobile Home Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004) ("Whether it is construed as a facial or as-applied takings claim, the Appellant still must satisfy the second ripeness requirement by showing it exhausted available state remedies for compensation."); *Kamaole Pointe Dev. L.P. v. County of Maui*, 573 F. Supp.2d 1354, 1373 (D. Haw. 2008) (holding that the requirement that a plaintiff seek compensation through state procedures before turning to the federal courts applies to facial and as-applied challenges). Because Plaintiffs have failed to seek just compensation through established state procedures, their Takings Clause claim is not ripe for review.

Citing *Horne v. Department of Agriculture*, 133 S. Ct. 2053, 2062 (2013), Plaintiffs next argue that their failure to satisfy the *Williamson County* requirements does not necessarily deprive this Court of jurisdiction to consider the Takings Clause claim, because ripeness is only a "prudential" requirement. *Horne*, however, is factually distinguishable. The plaintiffs in that case were not required to satisfy the prudential ripeness requirement because there was no alternative remedy available through which they were required to proceed. *Id.* at 2062-63. In contrast, the State of Ohio provides "reasonable, certain, and adequate" procedures for seeking just compensation. *Coles*, 448 F.3d at 865.

Nevertheless, the Sixth Circuit has also recognized that, in certain circumstances, a federal court may be justified in exercising jurisdiction over an unripe Takings Clause claim. In *Wilkins*, the court explained as follows:

11

> The requirement to seek compensation prior to bringing suit will often serve important federalism interests. In regulatory takings cases involving sensitive issues of state policy, or cases that turn on whether the plaintiff has a property interest as defined by state law, ripeness concerns will prevent a federal court from reaching the merits prematurely. But where it is clear that there has been no "taking," an issue of federal constitutional law, no jurisprudential purpose is served by delaying consideration of the issue. If anything, dismissing the case on ripeness grounds does a disservice to the federalism principles embodied in this doctrine as it would require the state courts to adjudicate a claim, already before the federal court, that clearly has no merit.

744 F.3d at 418. *See also A Forever Recovery, Inc. v. Township of Pennfield*, 606 F. App'x 279, 282 (6th Cir. 2015) (noting that the exercise of jurisdiction over unripe Takings Clause claims is not objectively unreasonable when it is clear that there has been no taking).

Here, however, the Court cannot definitively say that there has been no regulatory taking. Plaintiffs allege that Defendants' conduct has deprived them of economically viable use of their property because potential purchasers are hesitant to build where the provision of Fire and EMS services is uncertain. Even though Plaintiffs may not have been deprived of *all* economically viable use of their property, they may still have a viable regulatory takings claim. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) ("Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred , depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of

12

the government action.") (citing *Penn Central Transp. Co. v. New York City*, 438

U.S. 104, 124 (1978)). *See also Warren Trust v. United States*, 107 Fed. Cl. 533,

551-52 (Fed. Cl. 2012) (distinguishing between categorical and non-categorical

regulatory takings).

In short, the exception to the ripeness requirement, as discussed in *Wilkins*,

does not apply in this case.  Prudential considerations dictate that, under the

circumstances presented here, Plaintiffs be required to seek just compensation

through the procedures provided by the State of Ohio prior to pursuing a Takings

Clause claim in federal court.  The Court will, therefore, dismiss Count I of the

Complaint without prejudice.[4]

### 2.    Equal Protection Clause (Count III)

In Count III of the Complaint, Plaintiffs allege that Defendants'

> open, obvious and notorious animus towards the Development, their
> extraordinary efforts to block the Development, and their intentional
> and purposeful discrimination against Plaintiffs by, inter alia, refusing
> to provide fire and EMS services to the development on equal footing
> with other parcels within the Township violates the Equal Protection
> Clause of the United States Constitution.

Doc. #1, PageID#18.  Plaintiffs' Equal Protection claim is based on a "class of one"

theory, which requires Plaintiffs to prove that: (1) the government treated them

"differently from others similarly situated;" and (2) "there is no rational basis for

such difference in treatment."  *EJS Props. LLC v. City of Toledo*, 698 F.3d 845,

---

[4]    The fact that Plaintiffs have included a concurrent mandamus claim in Count II
of their Complaint does not cure the ripeness problem.  Plaintiffs must be denied
just compensation in *state* court *prior* to pursuing their Takings Clause claim.  *See*
*Williamson County*, 473 U.S. at 195.

864-65 (6th Cir. 2012) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

As the Sixth Circuit has noted, class-of-one claims are viewed with skepticism because this theory "could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors," a concept which is "offensive to state and local autonomy in our federal system." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)). Plaintiffs asserting an Equal Protection claim based on a "class-of-one" theory therefore face a "heavy burden." *Id.*

Here, the Court agrees with Defendants that Plaintiffs have failed to state a claim upon which relief can be granted. Defendants first argue that Plaintiffs have not identified any particular property owner or entity to whom Plaintiffs are similarly situated "in all material respects." "Exact correlation" is not required, but "relevant similarity" is. *See Loesel*, 692 F.3d at 462.

Plaintiffs broadly allege that Defendants have violated their Equal Protection rights by "refusing to provide fire and EMS services to the development on equal footing with other parcels within the Township." Doc. #1, PageID#18. At oral argument, counsel suggested that Plaintiffs are similarly situated to other property owners in the Township because they all pay taxes to the Township at the same rate. Counsel conceded, however, that, unlike other property owners, a portion of Plaintiffs' taxes are diverted through the TIF.

14

As noted in *Schellenberg v. Township of Bingham*, 436 F. App'x 587, 592

(6th Cir. 2011), "plaintiffs cannot establish a cognizable 'class of one' equal

protection claim merely by relying on the unsupported assertion that 'all applicants'

are similarly situated." *See also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564,

575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated

differently from other individuals seeking rezoning, they fail to allege any specific

examples of *similarly situated* individuals, let alone evidence of situations where

the proposed rezoning was similar in scale or impact."); *Taylor Acquisitions, LLC v.

City of Taylor*, No. 06-10650, 2007 WL 6064486, at *5 (E.D. Mich. Sept. 27,

2007) (holding that plaintiff's "bare assertion" that other developers who

interacted with the City were treated more favorably was "insufficient to support a

claim for violation of equal protection" based on a class-of-one theory).

Plaintiffs in this case have not identified any other property owners included

in the Fire District, whose land was annexed to the City of Centerville or was

subject to a TIF. Plaintiffs' failure to identify any other landowner who is similarly

situated "in all material respects" renders this claim subject to dismissal.

Defendants also argue that Plaintiffs have failed to state a claim upon which

relief can be granted because Plaintiffs have not adequately pled that Defendants

lacked a rational basis for the decision to exclude the Development from the

proposed Fire District. A plaintiff may establish a lack of rational basis either by

negating "every conceivable basis which might support the government action," or

15

by demonstrating that "the challenged government action was motivated by animus or ill will." *EJS Props.*, 698 F.3d at 865.

In this case, Plaintiffs allege that the Township's decision to exclude the Development from the Fire District was motivated by animus or ill will directed at the TIF. Plaintiffs contend that the Township excluded the Development from the Fire District because the Township did not believe that the City was providing sufficient funds to cover the increased cost of providing Fire and EMS services to the Development.

Citing *Taylor Acquisitions LLC v. City of Taylor*, 313 F. App'x 826 (6th Cir. 2009), Defendants argue that allegations that the creation of the Fire District was motivated by an animus directed *at the TIF* are insufficient. Rather, the alleged conduct must be "motivated by personal malice *unrelated to the defendant's official duties.*" *Id.* at 838 (quoting *Klimik v. Kent Cty. Sheriff's Dep't*, 91 F. App'x 396, 401 (6th Cir. 2004)). In *Taylor Acquisitions*, the plaintiff-developer alleged that the mayor committed several acts designed to thwart a development project. However, the plaintiff's own vice-president testified that she believed that the mayor harbored no discriminatory animus toward the plaintiff, and would have done the same to any other developer. The court held that the district court properly entered summary judgment on the equal protection claim because "[a]t most . . . Plaintiff's evidence demonstrated animus toward the *project*, not toward Plaintiff itself." *Id.* at 838 (emphasis in original).

16

Likewise, Defendants maintain that, in this case, Plaintiffs have not alleged that the Township harbored any personal animus toward them. Rather, because it was frustrated by the financial impact of the TIF, the Township presumably would have excluded this particular property from the Fire District regardless of who the developer was. Absent allegations that the alleged animus was directed toward Plaintiffs themselves, as opposed to the TIF, Plaintiffs have not stated a viable equal protection claim.

In summary, based on the case law cited above, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted. Not only have Plaintiffs failed to identify any similarly-situated property owners who were treated more favorably, but they have also failed to allege that Township's creation of the Fire District was motivated by a personal animus toward Plaintiffs.

At oral argument, Plaintiffs' counsel suggested that, if required, Plaintiffs could amend their Complaint to resolve both of these deficiencies. Counsel stated that other stores and restaurants subject to the same TIF were included in the proposed Fire District. Counsel also indicated that, if necessary, the pleadings could be amended to state that the personal animus was directed toward Plaintiffs, rather than toward the TIF.

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend a pleading when justice so requires. In this case, the Court finds no "undue delay, bad faith or dilatory motive. . . , repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . [or] futility of

17

amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, Plaintiffs shall have thirty days from the date of this Decision and Entry to file an Amended Complaint to address these two deficiencies, if they can do so within the strictures of Federal Rule of Civil Procedure 11.

### 3.  42 U.S.C. § 1983 and § 1988 (Count IV)

In Count IV of the Complaint, Plaintiffs note that 42 U.S.C. § 1983 provides a remedy for persons whose constitutional rights have been violated under color of state law, and 42 U.S.C. § 1988 allows parties who prevail under § 1983 to recover attorneys' fees.

Defendants correctly point out that Count I (Takings Clause) and Count III (Equal Protection) must be construed as § 1983 claims. They argue, however, that because Count IV asserts no separate violation of constitutional rights, it should be dismissed.

At oral argument, Plaintiffs' counsel described Count IV as "a general tort claim that kind of subsumes everything." He acknowledged that the Takings Clause claim was somewhat atypical, but argued that, even if the Court found that the Takings Clause claim was not ripe or not viable, § 1983 might nevertheless provide a remedy for the alleged deprivation of property rights. Counsel further suggested that such a § 1983 claim might permit Plaintiffs to circumvent sovereign immunity of political subdivisions for state law tort claims involving interference with property interests. In support, counsel relies on *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999).

18

The Court rejects both of these arguments. At issue in *City of Monterey* was whether a plaintiff seeking to recover for a regulatory taking under § 1983 had a right to a jury trial. The court held that, because a § 1983 action seeking legal relief basically sounds in tort, it is an "action at law," giving rise to a Seventh Amendment right to a jury trial. *Id.* at 709-11. The court noted that the gravamen of the plaintiff's § 1983 Takings Clause claim was that, not only had the City effected a regulatory taking, but, at that time, the State of California had no adequate postdeprivation procedures in place. The Court therefore found that the § 1983 claim was analogous to historical, common law tort actions to recover damages for interference with property interests, *i.e.*, nuisance and trespass, in which there was a right to a jury trial. *Id.* at 715-16.

The Court does not read *City of Monterey* to stand for the proposition that § 1983 provides an avenue of recovery for *any* interference with property interests, or that a plaintiff can use § 1983 to circumvent a political subdivision's sovereign immunity for common law tort claims. Section 1983 does create a species of tort liability, but only for those torts that rise to the level of a constitutional violation.

Because Count IV of Plaintiff's Complaint does not tie the § 1983 claim to any constitutional violation other than those already alleged in Counts I and III, Plaintiffs have failed to state a claim upon which relief can be granted. The Court will therefore dismiss Count IV with prejudice.

19

C.    **Supplemental State Law Claims**

In addition to the federal claims discussed above, Plaintiffs have also asserted numerous state law claims, including: (1) a violation of the Takings Clause of Article I, Section 19 of the Ohio Constitution (Count I); (2) mandamus (Count II); (3) declaratory judgment (Count V); (4) injunctive relief (Count VI); (5) unjust enrichment (Count VII); (6) tortious interference with business relationships (Count VIII); and (7) lost profits and damages (Count IX).  Defendants have moved to dismiss these claims for a wide variety of reasons.

Given that the Court has dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims at this juncture.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Court therefore dismisses all of Plaintiffs' state law claims without prejudice.

Should Plaintiffs file an Amended Complaint to correct the pleading deficiencies with respect to the Equal Protection Clause claim, they may reassert their state law claims at that time.  Defendants may, of course, again move to dismiss.[5]  Once the Court determines whether Plaintiffs have stated a viable federal claim, the Court will determine whether to exercise supplemental jurisdiction over

––––––––––––––––––––––

[5]    The Court notes that it appears that Plaintiffs have already abandoned their claims of unjust enrichment, tortious interference with business relationships, and lost profits and damages, having failed to respond to the arguments raised in Defendants' Motion for Judgment on the Pleadings.

20

the state law claims.  The Court will also decide whether certification of questions to the Ohio Supreme Court may be warranted.

The Court acknowledges Plaintiffs' argument that the need for certification is even more urgent given the Township's recent enactment of Resolutions that again exclude the Development from the newly-created Fire District.  However, this Court cannot, and will not, exercise supplemental jurisdiction over the state law claims until it is satisfied that Plaintiffs have stated a viable federal claim.

### III.    Conclusion

For the reasons set forth above, the Court SUSTAINS Defendants' Motion for Partial Judgment on the Pleadings, Doc. #12, in its entirety.  Plaintiffs' federal Takings Clause claim, as alleged in Count I of the Complaint, is not yet ripe and is DISMISSED WITHOUT PREJUDICE.

Plaintiffs' Equal Protection claim, as alleged in Count III of the Complaint, is DISMISSED for failure to state a claim upon which relief can be granted.  However, Plaintiffs may file an Amended Complaint within 30 days of the date of this Decision and Entry, if they can do so within the constraints of Federal Rule of Civil Procedure 11.  Count IV of the Complaint, asserting a free-standing claim under 42 U.S.C. § 1983, is DISMISSED WITH PREJUDICE.

Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and DISMISSES them WITHOUT PREJUDICE.

The above-captioned case shall remain pending on the Court's docket. If Plaintiffs do not file an Amended Complaint within 30 days of the date of this Decision and Entry, the Court will terminate the case at that time.


Date: October 27, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE